# EXHIBIT A

CAUSE NO. 21-07-24042-CVR

| | | |
|---|---|---|
| JEFF SPRINGMAN, Individually and LINDY LONG as Next Friend for O. G. Springman (a minor) | § § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| VS. | § § § | REEVES COUNTY, TEXAS |
| DIAMONDBACK E&P LLC | § | |
| *Defendant.* | § | 143rd JUDICIAL DISTRICT |

## PLAINTIFFS ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW JEFF SPRINGMAN, Individually, and LINDY LONG, as next friend for O.G. Springman (a minor), and for causes of action respectfully show the following:

**1.00    Discovery Control Plan**

1.01    Plaintiffs intend to conduct Level 3 discovery under TEXAS RULE OF CIVIL PROCEDURE 190.4.

**2.00    Parties - Plaintiffs**

2.01    Plaintiff JEFF SPRINGMAN is a resident of Lubbock, Lubbock County, Texas. Pursuant to CPRC §31.04 the last three digits of his driver's license number are 351 and the last three digits of his social security number are 560.

2.02    Plaintiff LENDY LONG, as Next Friend of O.G. SPRINGMAN, is a resident of Lubbock, Lubbock County, Texas. Ms. Long is the girlfriend of Jeff Springman and the mother of his daughter O.G. Springman, a minor, and is qualified to bring this action on her behalf as Next Friend pursuant to Rule 44, TEXAS RULES OF CIVIL PROCEDURE.

**3.00    Parties - Defendant**

3.01    Defendant DIAMONDBACK E&P LLC is a Delaware limited liability company which maintains its headquarters / nerve center in Midland, Midland County, Texas. It may be served with citation through its registered agent for process in the State of Texas, Corporation Service Company, 211 E 7th Street, Suite 620, Austin, Texas 78701.

**4.00    Jurisdiction and Venue**

4.01    Pursuant to Section 15.002(a)(3) and 15.005 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE venue is proper in Reeves County, Texas because it the location of Defendant Pilot's trucking yard where Plaintiff was employed as a crude oil truck driver and received the representations from DIAMONDBACK set forth herein, and is the location where a substantial part of the events giving rise to the claim occurred. Defendant DIAMONDBACK further does business in Reeves County, Texas by conducting oil and gas drilling operations there.

4.02    The Court has subject matter jurisdiction of the causes of action herein as the Plaintiffs' damages are within this Court's jurisdictional limits, and the Court has personal jurisdiction over Defendant as it is a citizen of, has a principal office in, and conducts business in the State of Texas.

4.03    This case is not removable to federal court because there is no complete diversity of citizenship between the parties. Defendant DIAMONDBACK E&P, LLC is considered a citizen of the State of Texas as that is the location of its principal place of business as its high-level officers direct, control and coordinate the company's activities in Midland, Texas. 28 U.S.C. §1332. Diamondback's website further affirmatively admits that "Diamondback is an independent oil and

gas company headquartered in Midland, Texas focused on the acquisition, development, exploration and exploitation of unconventional, onshore, oil and gas reserves in the Permian Basin in West Texas."

**5.00  Rule 47 Statement of Monetary Relief Sought**

5.01    As a result of Defendant's conduct, Plaintiff Jeff Springman sustained physical injuries which are terminal. He is currently under hospice care. Plaintiffs request the finder of fact to award the Plaintiffs fair and reasonable amounts of damages after consideration of all the evidence presented in the case.  However, Rule 47 of the TEXAS RULES OF CIVIL PROCEDURE require Plaintiffs to provide a statement regarding the amount of monetary relief sought. Accordingly, Plaintiffs state the monetary relief sought herein is over $1,000,000.

**6.00  Statement of Facts**

6.01    On or about **October 10, 2019**, Plaintiff Jeffery Springman was employed by Pilot Transportation as a crude oil transport driver working out of a trucking facility in Pecos, Reeves County, Texas. Plaintiff's job duties included picking up loads of petroleum products from production sites, testing it for suitability and compliance with quality standards, and transporting it to offloading / pipeline stations for delivery.

6.02    Crude oil transport drivers are subjected to varying conditions that can be extremely hazardous and deadly. Crude oil storage tanks contain hydrocarbon chemical gases and vapors released by the petroleum, including benzene, toluene, ethylbenzene, xylenes and hydrogen sulfide. Many of these chemicals are known to be toxic. Before a transport driver loads their truck with the oil from the storage tank, they must first manually gauge and sample the oil to determine its quality. On many leases, this is done by climbing to a platform to the top of the tank battery

and taking a sample of the oil through a port known as the "thief hatch." When opening the thief hatch, if the hydrocarbon vapors have not been released through the flare or a functional vent system, they can build up and spray into the face of the personnel who opens the hatch. Exposure to these vapors can cause immediate health effects, including the loss of consciousness and death. Accordingly, it is critical that well production personnel monitor the level of hydrocarbon vapors or vapor flow rate being released by the stored petroleum into the tank and use the flare and maintenance of the thief hatch to prevent pressurization of the vapors. It is also critical that production personnel accurately inform transport drivers of the vapor and pressure characteristics of the product that they are to be sampling and loading. This is done primarily through a "safety data sheet" that should be located at the tank battery specifying the chemical composition and gravity of the product. This information warns a driver of the potential toxicity of the environment and the safety precautions necessary.

6.03   On the morning of October 10, 2019, Plaintiff was dispatched from Pilot's Pecos, Texas yard to pick up a load of crude oil from the "Binldey" lease. He was assigned to have a new trainee driver, Greg Fausto, with him and to train Mr. Fausto on the job duties and procedures. Plaintiff was told by Pilot dispatch, based on information provided by DIAMONDBACK that the lease was a "green lease producing no emissions" meaning that it did not require specialized safety equipment such as gas masks, respirator, or a self-contained breathing apparatus.

6.03   Plaintiff and Mr. Fausto drove to the "Binldey" lease. On arrival, they learned that well number did not match the dispatch. They called the DIAMONDBACK pumper and were told that the dispatch should say it was the nearby "Binkley" lease not the "Binldey" lease. Plaintiff called the Pilot yard and spoke to Rosie, the lead driver, who confirmed the dispatch misnamed

the lease but that "everything else was the same. Go ahead, it's safe." Plaintiff and Fausto then drove to the Binkley lease, well 37-1-H, which was less than 10 minutes away.

6.04 When Plaintiff arrived at the Binkley lease, he was met by the DIAMONDBACK pumper who walked up to his truck and told them that the oil production was going into tank 4 so they should pull from tank 3. Plaintiff asked him if it was "safe" – meaning was the product under pressure or was it emitting high quantities of hydrocarbon or toxic vapors. The pumper told him "Yeah [it's safe], go get it."

6.05 Plaintiff drove his truck to tank 3. He noticed that the flare, which is used to burn off excess pressure of the stored oil, was not on – indicating that the tank was not under pressure. No safety data sheet was present to warn Plaintiff that the product was anything other than production from a green lease. Plaintiff and Fausto climbed to the top of the tank battery and positioned themselves upwind of the thief hatch for tank 3. Fausto stood behind Plaintiff as Plaintiff started to open the thief hatch. When Plaintiff began to open the hatch, it had so much pressure that it blew open and engulfed him in vapors, even though he was upwind of the opening. Plaintiff was immediately dizzy and lost consciousness. Fausto caught him and braced him against the rail. Fausto saw that Plaintiff's nose was bleeding. When Plaintiff came to, Fausto told him that he couldn't smell or taste anything and that Plaintiff's four-way H2S monitor was alarming and reading "300 LEL" (low explosive limit). Plaintiff he immediately sent Fausto down to safety ahead of him. When Plaintiff got down, he began to feel better as was able to breathe fresh air. His condition improved to the point, he felt it was possible to load the product with Fausto doing almost all the work. They then dropped off the load at the transfer station and returned to the Pecos yard.

6.06　Plaintiff continued to try to work and drive despite not feeling well. His condition continued to deteriorate, and by October 28, 2019, he was no longer able to drive and he was unable to go to work.

6.08　Plaintiff's medical condition has continued to deteriorate following his exposure to the hydrocarbon vapors. He was never able to return to work after October 28, 2019 and is completely disabled as a result of his injury set forth herein and has recently been placed on hospice care.

6.09 OSHA has long documented the known dangers to personnel such as Plaintiff performing crude oil tank sampling and that the vapors present in such situations can be toxic if inhaled. Further it is established that the toxic effects of the inhalation of such vapors include damage to the respiratory system, the liver, gastrointestinal tract, heart and other parts of the body. Prior to his exposure to such vapors as set forth herein, Plaintiff had no health issues and had recently passed an invasive physical for the purchase of life insurance.

**7.00　Causes Of Action:**

**7.01　Respondeat Superior**

At all times material to the incident made the basis of this lawsuit, the employees, and agents of Defendant, as referenced herein, were acting within the course and scope of their employment with DIAMONDBACK and they are vicariously liable for the for all the acts and/or omissions of their employees.

**7.02　Negligence: DIAMONDBACK**

On the occasion in question, DIAMONDBACK was aware that stored hydrocarbons are known to produce dangerous concentrations of toxic gases which can cause serious injury or death

if inhaled. Further, DIAMONDBACK was aware that such crude oil stored in a tank battery can release such vapors and develop pressures within the storage tanks. Further, DIAMONDBACK knew that allowing such pressures to accumulate, without burning off the accumulated vapors via the flare stack, creates a dangerous condition for persons working on or near the tanks, especially persons sampling and hauling the crude oil such as Plaintiff.

Because of its control over the conditions under which the crude oil from the well was stored, DIAMONDBACK had a legal duty to persons who would foreseeably encounter the oil or the vapors produced by it such as Plaintiff; to inspect the conditions under which the oil was being stored; and to warn others about the dangers created by the particular chemical concentrations of the oil via a safety data sheet and/or its storage conditions (pressure) or to make those conditions safe. DIAMONDBACK negligently breached that duty to Plaintiff which was a foreseeable cause of the occurrence in question and of the injuries and damages sustained by Plaintiff.

### 7.03 Negligent Misrepresentation

On the occasion in question, DIAMONDBACK, through its pumper employee, represented to Plaintiff that the stored oil and its storage conditions were safe. Such representation was false and was given to Plaintiff for his guidance and with the intent that he rely on such representation. DIAMONDBACK failed to use reasonable care in making the representation which Plaintiff relied upon and Plaintiff suffered injury as a proximate result.

### 7.04 Gross Negligence

(a) On the occasions in question, the conduct of DIAMONDBACK, when viewed objectively from the standpoint of DIAMONDBACK, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

(b) On the occasion in question, DIAMONDBACK had actual, subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others.

(c) The conduct of DIAMONDBACK was grossly negligent, and therefore the law allows for the imposition of exemplary damages, for which Plaintiffs also now sue.

### 8.0 Damages

8.01 As a direct proximate result of the negligent acts described above and/or omissions on the part of Defendant, Plaintiff JEFFREY SPRINGMAN, who was 49 years old at the time of the incident, has suffered serious and permanent injuries and damages, and is now on hospice care. Accordingly, Plaintiff has suffered and seeks the following damages:

1. Medical Expenses: Plaintiff has incurred medical expenses in the past. These expenses were incurred for reasonable and necessary care and treatment of his injuries. The charges incurred are reasonable and were the usual and customary charges for the same or similar services at the time and place rendered. Plaintiff will also incur medical expenses in the future in an amount within the jurisdictional limits of this Court;

2. Physical Pain and Suffering: Plaintiff has endured physical pain and suffering in the past and will continue to endure severe physical pain and suffering in the future;

3. Mental Anguish: Plaintiff has endured severe mental anguish in the past and will continue to endure severe mental anguish in the future;

4. Physical Impairment: Plaintiff has suffered physical impairment in the past and will continue to suffer physical impairment in the future;

5. Lost Wages and Earning Capacity: Plaintiff has suffered a loss of wages in the past and will continue to suffer a loss of earning capacity in the future.

By reason of the above and foregoing, Plaintiff JEFFREY SPRINGMAN has been damaged in a sum within the jurisdictional limits of this Court, for which Plaintiff hereby sues.

8.02    Plaintiff O.G. SPRINGMAN is the five-year old minor child of JEFFREY SPRINGMAN. As a result of the serious and continuing injuries of her father, O.G. SPRINGMAN has been deprived of a father who is able to be active in her life and who is expected to die from such injuries long before his normal life expectancy. Plaintiff O.G. SPRINGMAN lives with her father and is forced to watch, on a daily basis, his health struggle, deterioration and suffering. Plaintiff O.G. SPRINGMAN has suffered a loss of consortium (love, care, companionship, advice, comfort, society, joy of shared experiences and guidance) as a result of the serious, permanent and disabling injury to her father and will continue to suffer such injury for many years to come. A right to recovery for such loss and damage to the parent – child relationship, even when the children are adults, is recognized and protected by Texas law. *Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1990). Such injury to Plaintiff was a natural and foreseeable result of the negligence of Defendant and was proximately caused by Defendant.

8.03 The damages of the Plaintiffs are within the jurisdictional requirements of this court.

**9.00    Costs and Interest**

9.01    The Plaintiffs also seek recovery for all costs of court.

9.02    The Plaintiffs also seek recovery of pre-judgment and post-judgment interest in the maximum amounts allowable by law.

**10.0    Jury Demand**

Plaintiffs hereby demand a jury trial and tender the proper jury fee with this filing.

**11.00   Prayer**

Plaintiffs pray that the Defendant be cited to appear herein and answer, and upon final hearing, Plaintiffs be awarded a Judgment against the Defendant for actual or compensatory

damages (past and future) as set forth above and/or to the fullest extent allowable by law and which are found to be fair and reasonable in amounts in excess of the minimum jurisdictional limits of this Court; exemplary damages for gross negligence, costs of court; pre-judgment and post-judgment interest at the highest lawful rates until the Judgment is satisfied in full; and for such other and further relief, at law and in equity, to which the Plaintiffs may show themselves justly entitled.

RESPECTFULLY SUBMITTED:

/s/ Kern A. Lewis
Kern A. Lewis
Texas Bar No. 12295320
klewis@galyen.com

BAILEY & GALYEN, P.C.
1300 Summit Ave., Ste 650
Fort Worth, Texas 76102
817.276.6000 [Telephone]
817.276.6010 [Facsimile]

Bill Weinacht
Texas Bar No. 21083900
weinachtlawfirm@yahoo.com

THE WEINACHT LAW FIRM
420 S Cypress St.
PO Box 170
Pecos, Texas 79772
432.445.2013 [Telephone]
432.445.5255 [Facsimile]

ATTORNEY FOR PLAINTIFFS