# EXHIBIT B



# Service of Process Transmittal
08/09/2021
CT Log Number 540045223

| | |
|---|---|
| **TO:** | Kristin Seabrook, General Counsel<br>Pilot Flying J<br>5508 Lonas Dr<br>Knoxville, TN 37909-3221 |
| **RE:** | **Process Served in Texas** |
| **FOR:** | Pilot Travel Centers LLC  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JEFF SPRINGMAN, Individually and LINDY LONG as Next Friend for O. G. Springman, Pltf. vs. DIAMONDBACK E&P LLC AND PILOT TRAVEL CENTERS LLC, DFTS. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 210724042CVR |
| **NATURE OF ACTION:** | Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 08/09/2021 postmarked on 08/03/2021 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/09/2021, Expected Purge Date: 08/14/2021<br><br>Image SOP<br><br>Email Notification,  Kristin Seabrook  Kristin.Seabrook@pilottravelcenters.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>866-401-8252<br>EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



PAT TARIN
CLERK OF DISTRICT COURT
REEVES COUNTY
POST OFFICE BOX 848
PECOS, TEXAS 79772



**CERTIFIED MAIL**



7020 1290 0001 3381 2106

U.S. POSTAGE ›› PITNEY BOWES
ZIP 79772 $ 013.11⁰
02 4W
0000353489 AUG 03 2021

PILLOT TRAVEL CENTERS, LLC
REG AGENT: CORP. SYSTEM
1999 BRYAN ST., STE. 900
DALLAS, TX. 75201

## THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."

TO: **PILOT TRAVEL CENTERS LLC**
**REGISTERED AGENT**
**CT CORPORATION SYSTEM**
**1999 BRYAN ST., STE. 900**
**DALLAS, TX 75201**

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the **Plaintiff's FIRST AMENDED PETITION** at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 143RD DISTRICT COURT of Reeves County, Texas at the Courthouse of said County in Pecos, Texas.

Said Plaintiff's Petition was filed in said court by KERN A. LEWIS , (attorney for Plaintiff or Plaintiff), whose address is 1300 SUMMIT AVE., STE. 650, FT. WORTH, TX 76102, on the 15th day of July, 2021 in this case, numbered **21-07-24042-CVR** on the docket of said court, and styled,

**JEFF SPRINGMAN, INDIVIDUALLY AND**
**LINDY LONG AS NEXT FRIEND FOR O.G. SPRINGMAN (A MINOR)**
**VS.**
**DIAMONDBACK E&P LLC**

The nature of Plaintiff's demand is fully shown by a true and correct copy of **Plaintiff's FIRST AMENDED PETITION** accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Pecos, Texas on 2nd day of August, 2021.

ATTEST: PAT TARIN, DISTRICT CLERK
143RD DISTRICT COURT
REEVES COUNTY, TEXAS

BY: _____
MISTY THOMAS, DEPUTY

CITATION BY MAIL

| | |
|---|---|
| **ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE**<br><br>Rule 106(a)(2) the citation shall be served by mailing to the Defendant **PILOT TRAVEL CENTERS LLC** by Certified Mail # *7020 1290 0001 3381 2106* Return Receipt Requested, a true copy of the Citation *PLAINTIFF'S FIRST AMENDED PETITION*<br><br>Sec. 17.027 Rules of Civil Practices and Remedies Code if prepared by Clerk of Court.<br><br>**PLACE THE GREEN RETURN RECEIPT HERE ON RETURN FROM THE POST OFFICE.** | **CERTIFICATE OF DELIVERY BY MAIL**<br><br>I hereby certify that on the 3RD day of August, 2021 at *4* o'clock *P*M., I mailed to<br><br>**PILOT TRAVEL CENTERS LLC REGISTERED AGENT CT CORPORATION SYSTEM** 1999 BRYAN ST., STE. 900 DALLAS, TX 75201<br><br>Defendant(s) by registered mail, with delivery restricted to Addressee Only, Return Receipt Requested, at the address stated above, a true copy of this citation with a copy of the Petition attached thereto.<br><br>PAT TARIN DISTRICT CLERK REEVES COUNTY, TEXAS 143RD DISTRICT COURT PO BOX 848 PECOS, TX 79772<br><br>BY: _____<br>MISTY THOMAS, DEPUTY |

CAUSE NO. 21-07-24042-CVR

| | | |
|---|---|---|
| JEFF SPRINGMAN, Individually and LINDY LONG as Next Friend for O. G. Springman (a minor) § § § § § § § § § § § | | IN THE DISTRICT COURT |
| Plaintiff, | | |
| VS. | | REEVES COUNTY, TEXAS |
| DIAMONDBACK E&P LLC and PILOT TRAVEL CENTERS LLC | | |
| Defendants. | | 143rd JUDICIAL DISTRICT |

## PLAINTIFFS FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW JEFF SPRINGMAN, Individually, and LINDY LONG, as next friend for O.G. Springman (a minor), making and filing this First Amendment of their Original Petition previously filed, and for causes of action respectfully show the following:

**1.00  Discovery Control Plan**

1.01  Plaintiffs intend to conduct Level 3 discovery under TEXAS RULE OF CIVIL PROCEDURE 190.4.

**2.00  Parties - Plaintiffs**

2.01  Plaintiff JEFF SPRINGMAN is a resident of Lubbock, Lubbock County, Texas. Pursuant to CPRC §31.04 the last three digits of his driver's license number are 351 and the last three digits of his social security number are 560.

2.02  Plaintiff LENDY LONG, as Next Friend of O.G. SPRINGMAN, is a resident of Lubbock, Lubbock County, Texas. Ms. Long is the girlfriend of Jeff Springman and the mother of

his daughter O.G. Springman, a minor, and is qualified to bring this action on her behalf as Next Friend pursuant to Rule 44, TEXAS RULES OF CIVIL PROCEDURE.

**3.00    Parties - Defendants**

3.01    Defendant DIAMONDBACK E&P LLC is a Delaware limited liability company which maintains its headquarters / nerve center in Midland, Midland County, Texas. It has previously been served with citation through its registered agent for process in the State of Texas, Corporation Service Company, 211 E 7th Street, Suite 620, Austin, Texas 78701. This Amended petition does not seek a more onerous judgment against it than prayed for in the original petition.

3.02    Defendant PILOT TRAVEL CENTERS LLC is a Delaware limited liability company which does business in Pecos, Reeves County, Texas by operating a trucking yard in Pecos, where Plaintiff Jeff Springman was employed as a crude oil truck driver. PILOT may be served with citation through its registered agent for process in the State of Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Dallas County, Texas 75201.

**4.00    Jurisdiction and Venue**

4.01    Pursuant to Section 15.002(a)(3) and 15.005 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE venue is proper in Reeves County, Texas because it the location of Defendant PILOT's trucking yard where Plaintiff was employed as a crude oil truck driver and received the representations from DIAMONDBACK as set forth herein and is the location where a substantial part of the events giving rise to the claim occurred. Defendant DIAMONDBACK also does business in Reeves County, Texas by conducting oil and gas drilling operations there.

4.02    The Court has subject matter jurisdiction of the causes of action herein as the

Plaintiffs' damages are within this Court's jurisdictional limits, and the Court has personal jurisdiction over each of the Defendants as each is either a resident of, has a principal office in, or conducts business in the State of Texas.

4.03  This case is not removable to federal court because there is no complete diversity of citizenship between the parties. Defendant DIAMONDBACK E&P, LLC, which has been previously served in this action, is considered a citizen of the State of Texas as that is the location of its principal place of business as its high-level officers direct, control and coordinate the company's activities in Midland, Texas. 28 U.S.C. §1332. Diamondback's website further affirmatively admits that "Diamondback is an independent oil and gas company headquartered in Midland, Texas focused on the acquisition, development, exploration and exploitation of unconventional, onshore, oil and gas reserves in the Permian Basin in West Texas."

4.04 Plaintiff's claims are not removable to federal court based on Defendant PILOT TRAVEL CENTERS, LLC's employee benefit plain because Plaintiff is not seeking benefits under that plan but asserting claims for PILOT's failure to maintain a safe workplace. *Hook v. Morrison Milling Co.*, 38 F.3rd 776, 781 (5th Cir. 1994), *McAteer v. Silverleaf*, 514 F.3d 411. Defendant terminated Plaintiff's participation in the plan and his employment shortly after he was injured, and he did not receive benefits under the plan.

4.05  Plaintiff's claims are further not subject to any arbitration clause with PILOT which might be contained in PILOT's benefit plan or other employment documents. Plaintiff was a DOT registered truck driver operating a DOT registered truck and was engaged in interstate commerce and exempt from arbitration under 9 U.S.C.A §1. Plaintiff's job as a transportation worker required him to remain in compliance with DOT regulations and to maintain he hours to remain eligible to

make trips transporting goods across state lines. In the short time that Plaintiff worked for PILOT he was required to travel to PILOT facilities across state lines in or near Carlsbad, New Mexico. In addition, PILOT terminated Plaintiff's employment and potential participation in PILOT'S benefit plan immediately following his injury and without providing any benefits under the plan to Plaintiff. PILOT's unilateral termination of the agreement waives any claim it might have to insist on compliance with the agreement by Plaintiff.

**5.00 Rule 47 Statement of Monetary Relief Sought**

5.01 As a result of Defendants conduct, Plaintiff Jeff Springman sustained physical injuries which are terminal. He is currently under hospice care. Plaintiffs request the finder of fact to award the Plaintiffs fair and reasonable amounts of damages after consideration of all the evidence presented in the case. However, Rule 47 of the TEXAS RULES OF CIVIL PROCEDURE require Plaintiffs to provide a statement regarding the amount of monetary relief sought. Accordingly, Plaintiffs state the monetary relief sought herein is over $1,000,000.

**6.00 Statement of Facts**

6.01 On or about **October 10, 2019**, Plaintiff Jeffery Springman was employed by PILOT as a crude oil transport driver working out of PILOT's trucking facility in Pecos, Reeves County, Texas. Plaintiff's job duties included picking up loads of petroleum products from production sites, testing it for suitability and compliance with quality standards, and transporting it to offloading / pipeline stations for delivery. Plaintiff was required to maintain eligibility with US DOT regulations so that Plaintiff was available to transport loads of crude oil across state lines whenever necessary, primarily to a facility near Carlsbad, N.M. if necessary. Plaintiff had just recently started employment with PILOT the prior month, September 2019.

6.02     Crude oil transport drivers are subjected to varying conditions that can be extremely hazardous and deadly. Crude oil storage tanks contain hydrocarbon chemical gases and vapors released by the petroleum, including benzene, toluene, ethylbenzene, xylenes and hydrogen sulfide. Many of these chemicals are known to be toxic. Before a transport driver loads their truck with the oil from the storage tank, they must first manually gauge and sample the oil to determine its quality. On many leases, this is done by climbing to a platform to the top of the tank battery and taking a sample of the oil through a port known as the "thief hatch." When opening the thief hatch, if the hydrocarbon vapors have not been released through the flare or a functional vent system, they can build up and spray into the face of the personnel who opens the hatch. Exposure to these vapors can cause immediate health effects, including the loss of consciousness and death. Accordingly, it is critical that well production personnel monitor the level of hydrocarbon vapors or vapor flow rate being released by the stored petroleum into the tank and use the flare and maintenance of the thief hatch to prevent pressurization of the vapors. It is also critical that production personnel accurately inform transport drivers of the vapor and pressure characteristics of the product that they are to be sampling and loading. This is done primarily through a "safety data sheet" that should be located at the tank battery specifying the chemical composition and gravity of the product. This information warns a driver of the potential toxicity of the environment and the safety precautions necessary.

6.03     On the morning of October 10, 2019, Plaintiff was dispatched from PILOT's Pecos, Texas yard to pick up a load of crude oil from the "Binldey" lease. He was assigned to have a new trainee driver, Greg Fausto, with him and to train Mr. Fausto on the job duties and procedures. Plaintiff was told by PILOT dispatch that the lease was a "green lease producing no emissions"

meaning that it did not require specialized safety equipment such as gas masks, respirator, or a self-contained breathing apparatus. Plaintiff had requested that he be assigned a "min-pac" breathing apparatus but was instructed by his manager that PILOT had a shortage of masks and did not want to incur the expense of maintaining and refilling such equipment, so their policy was that a driver would be given such safety equipment only if the dispatched assignment required it. This policy prevented drivers from assessing the conditions at the rig to which they had been dispatched and making their own decision whether the conditions constituted a potential safety hazard. On the morning of October 10, 2019, Plaintiff again asked if any "min-pac's" were available for him to take with him. His manager, Danny Hernandez, told him they were in short supply and the dispatch said it was a green lease, so "you don't need one, just do your job." Greg Fausto also asked that he be provided with an H2S monitor and was likewise told by Danny Hernandez that none were available, and it was a "safe lease" so that he needed to go without one.

6.04  Plaintiff and Mr. Fausto drove to the "Binldey" lease. On arrival, they learned that well number did not match the dispatch. They called the DIAMONDBACK pumper and were told that the dispatch should say it was the nearby "Binkley" lease not the "Binldey" lease. Plaintiff called the PILOT yard and spoke to Rosie, the lead driver, who confirmed the dispatch misnamed the lease but that "everything else was the same. Go ahead, it's safe." Plaintiff and Fausto then drove to the Binkley lease, well 37-1-H, which was less than 10 minutes away.

6.05  When Plaintiff arrived at the Binkley lease, he was met by the DIAMONDBACK pumper who walked up to his truck and told them that the oil production was going into tank 4 so they should pull from tank 3. Plaintiff asked him if it was "safe" – meaning was the product under

pressure or was it emitting high quantities of hydrocarbon or toxic vapors. The pumper told him "Yeah [it's safe], go get it."

6.06    Plaintiff drove his truck to tank 3. He noticed that the flare, which is used to burn off excess pressure of the stored oil, was not on – indicating that the tank was not under pressure. No safety data sheet was present to warn Plaintiff that the product was anything other than production from a green lease. Plaintiff and Fausto climbed to the top of the tank battery and positioned themselves upwind of the thief hatch for tank 3. Fausto stood behind Plaintiff as Plaintiff started to open the thief hatch. When Plaintiff began to open the hatch, it had so much pressure that it blew open and engulfed him in vapors, even though he was upwind of the opening. Plaintiff was immediately dizzy and lost consciousness. Fausto caught him and braced him against the rail. Fausto saw that Plaintiff's nose was bleeding. When Plaintiff came to, Fausto told him that he couldn't smell or taste anything and that Plaintiff's four-way H2S monitor was alarming and reading "300 LEL" (low explosive limit). Plaintiff he immediately sent Fausto down to safety ahead of him. When Plaintiff got down, he began to feel better as was able to breathe fresh air. His condition improved to the point, he felt it was possible to load the product with Fausto doing almost all the work. They then dropped off the load at the transfer station and returned to the Pecos yard.

6.07    Plaintiff notified his manager Jorge Hernandez that they had been gassed at the lease, showed him his monitor, and stated that they need to see a doctor. Jorge told them they looked fine – but they should fill out an incident report and he would take care of it. Plaintiff completed the incident form and waited for instructions. Plaintiff asked again if he was going to a doctor and was told – "you look fine – go back to your room" at the man camp. Plaintiff had been

specifically instructed during his orientation that all medical visits had to be approved by his supervisor.

6.08 The next morning, Plaintiff still felt ill. He found supervisor Danny Hernandez (Jorge's brother) and told him he still felt ill, and his monitor read 300 LEL and he wanted a printout from the monitor. Danny told him the printer was broken and place his monitor into a box and it would be printed later. He gave Plaintiff another monitor, took a picture of the bar code on the new monitor and emailed it to corporate headquarters of PILOT.

6.09 Plaintiff continued to try to work and drive despite not feeling well. His condition continued to deteriorate, and he continued to request authorization to see a doctor, but he was repeatedly told he looked fine. By October 28, 2019, he was no longer able to drive and he was unable to go to work. On October 29, 2019, he again called dispatch and reported that he was too sick to work. On November 2, 2019, he emailed Jorge Hernandez and reported that he was still sick. Jorge responded that he would need a doctor's note to return to work (though Jorge would not give him an authorization to see a doctor or the name of an approved doctor).

6.10 On November 4, 2019, Plaintiff sent an email to Larry Garren, his regional supervisor and advised him he was still sick after the incident and asked for help in getting an immediate doctor's appointment. Garren denied knowledge of the incident, so Plaintiff told him about it directly via email. On November 6, Plaintiff again emailed Mr. Garren asking about why his request to see a doctor had been met with silence and stating that he was going to see one anyway. On November 7, 2019 at 11:25 am Plaintiff informed Mr. Garren by email that he had seen a doctor and was being put on disability due to breathing issues (from the gassing). A few hours later, Plaintiff received an email from Laura Soria, PILOT Human Resources, wanting a

recorded statement about the incident, which Plaintiff provided. Even then, PILOT failed and refused to provide Plaintiff with any authorization or assistance in obtaining medical help.

6.11    On December 17, 2019, PILOT terminated Plaintiff from employment for allegedly failing to provide medical documentation about his injuries, though Plaintiff had furnished such information to PILOT's legal counsel and even though PILOT continued to refuse permission to see a doctor and notified him that he was not eligible for benefits under their occupational injury benefit plan.

6.12    Plaintiff's medical condition has continued to deteriorate following his exposure to the hydrocarbon vapors. He was never able to return to work and is completely disabled because of the injury to respiratory system, the liver, gastrointestinal tract, heart and other parts of the body caused by the event in question and has been placed on hospice care.

6.13    OSHA has long documented the known dangers to personnel such as Plaintiff performing crude oil tank sampling and that the vapors present in such situations can be toxic if inhaled. Further it is established that the toxic effects of the inhalation of such vapors include damage to the respiratory system, the liver, gastrointestinal tract, heart, and other parts of the body. Prior to his exposure to such vapors as set forth herein, Plaintiff had no health issues and had recently passed an invasive physical for the purchase of life insurance.

## 7.00    Causes Of Action:

### 7.01    Respondeat Superior

At all times material to the incident made the basis of this lawsuit, the employees and agents of Defendants, as referenced herein, were acting within the course and scope of their employment

with PILOT or DIAMONDBACK and they are vicariously liable for the for all of the acts and/or omissions of their employees.

**7.02  Negligence: PILOT**

At all times relevant to the incident made the basis of this litigation, PILOT was a non-subscriber to the Texas Workers Compensation system as that term is used under the Texas Labor Code, yet PILOT hired Plaintiff and made use of his services as an employee and controlled the manner and performance of his job duties. Plaintiff was seriously and permanently injured in the course and scope of his employment with PILOT. As his employer, PILOT owed certain duties to Plaintiff which were negligently breached by PILOT to wit:

a. In failing to furnish Plaintiff with a safe place in which to work;

b. In requiring Plaintiff to expose himself to hazardous and toxic chemicals without having appropriate safety equipment readily available to him;

c. In failing to have appropriate safety policies and procedures in place at the time of the incident in question;

d. Other acts of negligence to be established by discovery.

Under the provisions of §406.033, Texas Labor Code, Defendant is barred from asserting a defense to Plaintiff's claims which is based on contributory negligence, assumption of the risk, or negligence of a fellow employee.

The above referenced acts and or omissions, were negligent, and were each singularly and when taken together, a proximate and foreseeable cause of the occurrence in question and of the injuries and damages sustained by the Plaintiff.

**7.03  Negligence: DIAMONDBACK**

On the occasion in question, DIAMONDBACK was aware that stored hydrocarbons are

known to produce dangerous concentrations of toxic gases which can cause serious injury or death if inhaled. Further, DIAMONDBACK was aware that such crude oil stored in a tank battery can release such vapors and develop pressures within the storage tanks. Further, DIAMONDBACK knew that allowing such pressures to accumulate, without burning off the accumulated vapors via the flare stack, creates a dangerous condition for persons working on or near the tanks, especially persons sampling and hauling the crude oil such as Plaintiff.

Because of its control over the conditions under which the crude oil from the well was stored, DIAMONDBACK had a legal duty to persons who would foreseeably encounter the oil or the vapors produced by it; to inspect the conditions under which the oil was being stored; and to warn others about the dangers created by the particular chemical concentrations of the oil via a safety data sheet and/or its storage conditions (pressure) or to make those conditions safe. DIAMONDBACK negligently breached that duty to Plaintiff which was a foreseeable cause of the occurrence in question and of the injuries and damages sustained by Plaintiff.

### 7.04  Negligent Misrepresentation: DIAMONDBACK

On the occasion in question, DIAMONDBACK, through its pumper employee, represented to Plaintiff that the stored oil and its storage conditions were safe. Such representation was false and was given to Plaintiff for his guidance and with the intent that he rely on such representation. DIAMONDBACK failed to use reasonable care in making the representation which Plaintiff relied upon and Plaintiff suffered injury as a proximate result.

### 7.05 Gross Negligence: PILOT and DIAMONDBACK

1. On the occasions in question, the conduct of PILOT and DIAMONDBACK, when viewed objectively from the standpoint of PILOT and DIAMONDBACK, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

2. On the occasion in question, PILOT and DIAMONDBACK had actual, subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others.

3. The conduct of PILOT and DIAMONDBACK was grossly negligent, and the type of conduct for which the law allows for the imposition of exemplary damages, for which Plaintiffs also now sue.

### 8.0 Damages

8.01 As a direct proximate result of the negligent acts described above and/or omissions on the part of Defendants, Plaintiff JEFFREY SPRINGMAN, who was 49 years old at the time of the incident, has suffered serious and permanent injuries and damages, and is now on hospice care. Accordingly, Plaintiff has suffered and seeks the following damages:

1. Medical Expenses: Plaintiff has incurred medical expenses in the past. These expenses were incurred for reasonable and necessary care and treatment of his injuries. The charges incurred are reasonable and were the usual and customary charges for the same or similar services at the time and place rendered. Plaintiff will also incur medical expenses in the future in an amount within the jurisdictional limits of this court;

2. Physical Pain and Suffering: Plaintiff has endured physical pain and suffering in the past and will continue to endure severe physical pain and suffering in the future;

3. Mental Anguish: Plaintiff has endured severe mental anguish in the past and will continue to endure severe mental anguish in the future;

4. <u>Physical Impairment</u>: Plaintiff has suffered physical impairment in the past and will continue to suffer physical impairment in the future;

5. <u>Lost Wages and Earning Capacity</u>: Plaintiff has suffered a loss of wages in the past and will continue to suffer a loss of earning capacity in the future.

By reason of the above and foregoing, Plaintiff JEFFREY SPRINGMAN has been damaged in a sum within the jurisdictional limits of this Court, for which Plaintiff hereby sues.

8.02 Plaintiff O.G. SPRINGMAN is the five-year old minor child of JEFFREY SPRINGMAN. As a result of the serious and continuing injuries of her father, O.G. SPRINGMAN has been deprived of a father who is able to be active in her life and who is expected to die from such injuries long before his normal life expectancy. Plaintiff O.G. SPRINGMAN lives with her father and is forced to watch, daily, his health struggle, deterioration, and suffering. Plaintiff O.G. SPRINGMAN has suffered a loss of consortium (love, care, companionship, advice, comfort, society, joy of shared experiences and guidance) as a result of the serious, permanent and disabling injury to her father and will continue to suffer such injury for many years to come. A right to recovery for such loss and damage to the parent – child relationship, even when the children are adults, is recognized and protected by Texas law. *Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1990). Such injury to Plaintiff was a natural and foreseeable result of the negligence of Defendant and was proximately caused by Defendant.

8.03 The damages of the Plaintiffs are within the jurisdictional requirements of this court.

## 9.00 Costs and Interest

9.01 The Plaintiffs also seek recovery for all costs of court.

9.02    The Plaintiffs also seek recovery of pre-judgment and post-judgment interest in the maximum amounts allowable by law.

## 10.0  Jury Demand

Plaintiffs hereby demand a jury trial and tender the proper jury fee with this filing.

## 11.00  Prayer

Plaintiffs pray that the Defendants be cited to appear herein and answer, and upon final hearing, Plaintiffs be awarded a Judgment against the Defendants for actual or compensatory damages (past and future) as set forth above and/or to the fullest extent allowable by law and which are found to be fair and reasonable in amounts in excess of the minimum jurisdictional limits of this Court; exemplary damages for gross negligence, costs of court; pre-judgment and post-judgment interest at the highest lawful rates until the Judgment is satisfied in full; and for such other and further relief, at law and in equity, to which the Plaintiffs may show themselves justly entitled.

RESPECTFULLY SUBMITTED:

/s/ Kern A. Lewis
Kern A. Lewis
Texas Bar No. 12295320
klewis@galyen.com

BAILEY & GALYEN, P.C.
1300 Summit Ave., Ste 650
Fort Worth, Texas 76102
817.276.6000 [Telephone]
817.276.6010 [Facsimile]

Bill Weinacht
Texas Bar No. 21083900
weinachtlawfirm@yahoo.com

THE WEINACHT LAW FIRM

420 S Cypress St.
PO Box 170
Pecos, Texas 79772
432.445.2013 [Telephone]
432.445.5255 [Facsimile]

ATTORNEYS FOR PLAINTIFFS